IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 10-cv-02130-RBJ-BNB

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHARLES BARRETT, and
KATHLEEN BARRETT,

Defendants.
_____

**ORDER**
_____

This court issued, *ex parte*, a Writ of Ne Exeat Republica [Doc. # 27] against Charles and Kathleen Barrett on December 15, 2010.  The Barretts were detained on August 8, 2013, by the Marshals Service as they prepared to leave the country.  The Barretts appeared with counsel this morning at a status conference.  The United States also was present.

The United States alleged in a Complaint [Doc. # 1, filed 9/1/2010] that in their 2007 tax return the Barretts "sought a refund based on false withholding credits in the amount of $326,421," and that the Internal Revenue Service ("IRS") "issued a refund to [them] in the amount of $217,615 based on the false information contained in the 2007 Return."  Id. at ¶6.  The Barretts deposited the refund into their bank account at the Paonia State Bank; wire transferred the money to an account in their names at Montrose Bank; then wire transferred $64,720 to an account with the Banco de la Oriental del Uruguay.  Id. at ¶¶6, 8-9.  An assessment of tax was made against the Barretts for unpaid federal income taxes for tax year 2007 in the amount of $324,271.  Id. at ¶7.  By this action the United States sought to reduce the

federal tax assessments against the Barretts to judgment and also sought an order requiring the Barretts to repatriate assets transferred abroad in order to pay their outstanding federal tax liabilities.  Id. at pp. 3-4.

The Barretts failed to answer or otherwise respond to the Complaint, and the Clerk of Court entered default against them.  Entry of Default [Doc. # 43, filed 12/7/2011].  Subsequently default judgment was entered against the Barretts "in the total amount of $255,976.68, plus interest and other statutory additions and less any payments made" and requiring the Barretts "to repatriate and pay over to the United States any and all funds that they wired to the Banco de la Republica Oriental del Uruguay."  Default Judgment [Doc. # 52, filed 4/9/2013].

The Writ of Ne Exeat Republica (the "Writ") commands the United States Marshal and any other officer in whose presence the defendants may be found to restrain them from departing the jurisdiction of the United States and to "bring them before a United States Magistrate Judge where they shall either (a) surrender their passports and all international travel documents; or (b) post a cash bond in an amount equal to the lesser of (i) $351,196.97 (the assessed amount of their unpaid federal tax liabilities) or (ii) the value of their net equity in their worldwide assets, as security that they will not depart the jurisdiction of the United States of America without prior permission of the court."  Writ [Doc. # 27] at pp. 1-2.  The United States also seeks to conduct discovery to determine the location, value, and legal status of the Barrett's assets.

The writ ne exeat republica is "an obscure writ that is ancient, infrequently used and, historically, a stranger to tax law."  Anthony D. Rebollo, *The Civil Arrest and Imprisonment of Taxpayers: An Analysis of the Writ of Ne Exeat Republica*, 7 PITT. TAX R. 103 (2010).  Its ancient and obscure nature notwithstanding, the writ specifically is available to the United States

pursuant to 26 U.S.C. §7402(a) in actions to collect taxes.  See United States v. Shaheen, 445 F.2d 6, 9-10 (7th Cir. 1971) (stating that "[t]he power of a district court to issue a writ ne exeat republica, though seldom exercised, is not questioned" and that a "proper office of the writ is to aid the sovereign to compel a citizen to pay his taxes").  However, a writ ne exeat republica cannot be employed "for any purpose akin to imprisonment for debt" or "as a substitute sanction" where there is a "bona fide inability to pay."  7 PITT. TAX R. at 148-49.

Where, as here, the writ was issued *ex parte* and the defendants later are detained, the writ "can authorize no more than a brief period of initial restraint during which the Government has the burden of proving, in an evidentiary hearing, after due notice has been given, its right to have the restraint continue in effect."  Id. at p. 10.  The requisite burden is described in United States v. Mathewson, 1993 WL 113434 (S.D. Fla. 1993), as follows:

> A Writ of Ne Exeat Republica is a form of injunctive relief that restrains the defendant from leaving the jurisdiction in order to compel feasance to the sovereign.  The court has the power to issue the Writ as may be necessary or appropriate for the enforcement of the internal revenue laws.  In appropriate circumstances, the Writ may issue to detain a citizen for a limited time to enable the Government to have effective discovery, both on issues of liability and with respect to the location, value, and legal status of the taxpayer's property.
>
> To receive issuance of the Writ, at a minimum, the Government must meet the burden of proof associated with a preliminary injunction.  In turn, preliminary injunctive relief stems from four factors: (1) a substantial likelihood the movant will succeed on the merits; (2) the movant will suffer an irreparable injury if the injunction is not issued; (3) the potential injury to the movant outweighs the potential harm to the opposing party; and (4) the injunction would not disserve the public interest.

Id. at **1-2 (internal quotations and citations omitted).  With respect to the second factor--concerning irreparable injury--the government may meet its burden by showing that "the

taxpayer's departure will substantially prejudice the collection of taxes." Id. at *2. And as to the fourth factor, "the collection of taxes certainly serves the public interest," and the government need make no further showing. Id.

At the status conference this morning, the defendants asserted that there is little or no money available, either here or abroad, to satisfy any tax liability. A similar argument was made under slightly different circumstances in Bank of America v. Veluchamy, 643 F.3d 185, 190 (7th Cir. 2011), where the court ruled:

> The district court had the power to impose a minimal seizure on the Veluchamys until they abided by the asset production order or explained to the district court why they could not. The Veluchamys complain that all of this effort is for naught because "[t]here is just very little money available to satisfy [Bank of America's] judgment." The district court has responded with an order designed to make them prove it, and until they show that the money is unavailable (or until they transfer the funds subject to the order back to the United States), their passports will remain in the district court's care.

IT IS ORDERED:

(1) Pending their compliance with the repatriation order contained in the Default Judgment [Doc. # 52] and further order of the court, Charles Barrett and Kathleen Barrett must (i) surrender their passports and all international travel documents to the United States Marshal; (ii) cancel all airline tickets for travel out of the United States and file proof of that cancellation on or before August 16, 2013; (iii) obtain no new passports or international travel documents; and (iv) not travel outside of the continental United States;

(2) Charles and Kathleen Barrett shall be released from custody upon the surrender of their passports;

(3) An evidentiary hearing is set for September 17, 2013, at 8:30 a.m., in Courtroom

401, 4th floor, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado, at which time (i) the United States must establish its right to have the Writ continue in effect; and (ii) the defendants may demonstrate that there is no money available to satisfy the repatriation order contained in the Default Judgment [Doc. # 52] or to pay their tax liability; and

(4)     In anticipation of the September 17 hearing, each side may take no more than three depositions. Deposition notices may include requests for production of documents which shall be responded to and responsive documents produced at or before the date and time of the deposition. Local rule of practice 30.1A, D.C.COLO.LCivR, is modified to provide that "reasonable notice" for the taking of a deposition shall be not less than five business days.

Dated August 13, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge