IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 10-cv-02130-RBJ-BNB

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHARLES BARRETT, and
KATHLEEN BARRETT,

Defendants.

_____

**CERTIFICATION OF FACTS PURSUANT TO 289 U.S.C. § 636(e)(6);
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE;
AND ORDER**

_____

This matter arises on the following:

(1)     The defendants' **Motion to Vacate Default Judgment** [Doc. # 53, filed 4/12/2013] (the "Motion to Vacate Default Judgment");

(2)     **United States' Motion for Contempt** [Doc. # 109, filed 10/24/2013] (the "Motion for Contempt"); and

(3)     **Defendants' Notice of Withdrawal of (1) Motion to Vacate Default Judgment [Doc. # 53], and (2) Memorandum In Support of Motion to Vacate Default Judgment [Doc. # 108]** [Doc. # 127, filed 11/27/2013] (the "Motion to Withdraw Motion to Vacate Default Judgment").

The Motion to Withdraw Motion to Vacate Default Judgment [Doc. # 127] is GRANTED, and the Motion to Vacate Default Judgment [Doc. # 53] is DENIED as withdrawn.

In addition, I respectfully CERTIFY FACTS to the district judge pursuant to 28 U.S.C. §

636(e)(6) demonstrating that the Barretts are in contempt of the Default Judgment, and I

respectfully RECOMMEND that the Barretts be confined in a half-way house until the contempt

is purged.

## I.  Background

This action was commenced on September 1, 2010, when the United States filed its

Complaint to Reduce Federal Tax Assessments to Judgment and to Obtain an Order Requiring

Defendants to Repatriate Assets [Doc. # 1] (the "Complaint").  The Complaint alleges that

Charles and Kathleen Barrett (the "Barretts") sought an income tax refund "based on false

withholding credits" and that the Internal Revenue Service issued a refund "in the amount of

$217,615.00 based on the false information contained in the 2007 Return."  Id. at ¶6.  The

Complaint also alleges that the Barretts wire transferred $64,720.00 from the United States to a

bank in Uruguay.  Id. at ¶9.  The Complaint asserted two claims for relief.  First, the United

States sought to reduce to judgment a tax assessment against the Barretts in the amount of

$351,196.97 plus interest and statutory additions as allowed by law.  Id. at Count One.  Second,

the United States sought an order requiring the Barretts to "repatriate the $64,720.00 that they

wired to their account with [Banco de la Republica Oriental del Uruguay]."  Id. at p. 5.

The Clerk entered default against the Barretts on December 7, 2011.  Entry of Default

[Doc. # 43].  On the Motion [Doc. # 50] of the United States, the district judge order that default

judgment enter against the Barretts.  Order [Doc. # 51, entered 4/8/2013].  The Clerk entered

Default Judge [Doc. # 52] on April 9, 2013.  The Default Judgment provides:

> ORDERED that default judgment is hereby entered in favor of
> Plaintiff United States of America and against Defendants Charles
> Barrett and Kathleen Barrett in the total amount of $255,976.68,
> plus interest and other statutory additions and less any payments

> made against the liabilities, accruing from March 1, 2013, on
> Count One of the United States' Complaint for unpaid federal
> income tax liabilities for the tax year ended December 31, 2007.  It
> is further
>
> ORDERED that on the claim for relief in Count Two, Charles
> Barrett and Kathleen Barrett are hereby ordered to repatriate and
> pay over to the United States any and all funds that they wired to
> the Banco de la Republica Oriental del Uruguay.

Id.

Almost immediately thereafter, on April 12, 2013, the Barretts filed, pro se, the Motion to Vacate Default Judgment [Doc. # 53].  That was followed by two additional requests to vacate the default judgment [Doc. ## 60 and 62], which were denied as redundant.  Recommendation and Order [Doc. # 106] at p. 4.

The Barretts returned to the United States in approximately August 2013, and were detained pursuant to a Writ of Ne Exeat Republica that had been entered against them.  Writ [Doc. # 27]; Order [Doc. # 75].  Counsel entered an appearance for the Barretts on August 12, 2013.

## II.  Applicable Procedure

The Motion for Contempt [Doc. # 109] has been referred to me.  I lack authority to enter a contempt citation under the facts presented here.  Although 28 U.S.C. § 636(e) confers contempt powers on a magistrate judge under certain circumstances, those powers do not extend to civil contempt occurring outside the presence of the magistrate judge in cases not subject to consent under 28 U.S.C. § 636(c).  The contempt procedure applicable here is set out in § 636(e)(6), as follows:

> [T]he magistrate judge shall forthwith certify the facts to a district
> judge and may serve or cause to be served, upon any person whose

3

> behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.  The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before the district judge.

In connection with certifying the facts to the district judge, "the magistrate judge may conduct a hearing, but the magistrate judge functions only to certify the facts and not to issue any order of contempt."  Bowens v. Atlantic Maintenance Corp., 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008)(internal quotation and citations omitted).  The initial show cause hearing before the magistrate judge merely provides the defendants with an opportunity to explain their conduct prior to the matter being certified to the district judge for a contempt trial.  In addition:

> If the [magistrate judge] finds [the respondents'] explanation to be satisfactory, [he] may choose not to certify the matter for further proceedings.  If this result occurs, the [magistrate judge's] preliminary show cause hearing will have been an efficient means of disposing of the matter.  On the other hand, should the [magistrate judge] not be satisfied with [the respondents'] explanation, [he] cannot adjudicate the matter [himself], but must follow the certification process of § 636(e).

In re Kitterman, 696 F. Supp. 1366, 1370 (D. Nev. 1988).

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."  Shillitani v. United States, 384 U.S. 364, 370 (1966).  Similarly, the United States Court of Appeals for the Tenth Circuit has stated that a "court's interest in ensuring a party's compliance with its orders is a great one, enforceable by fines and imprisonment."  Ohlander v. Larson, 114 F.3d 1531, 1541 (10th Cir. 1997).

An order of civil contempt must be supported by clear and convincing evidence

establishing that (1) a valid order exists, (2) the defendants had actual knowledge of the order, and (3) the defendants disobeyed the order.  <u>United States v. Ford</u>, 514 F.3d 1047, 1051 (10th Cir. 2008).  Once the movant makes the required showing, the burden shifts to the alleged contemnor to show either that he complied with the order of that he could not comply.  <u>Id</u>.

I held two hearings which are applicable to the Motion for Contempt.  First, I held a hearing on October 11, 2013, to consider whether the Writ of Ne Exeat Republica entered against the Barretts should continue in effect.  <u>See</u> Order [Doc. # 75]; Trans. of Proceedings of October 11, 2013 [Doc. # 110] (hereinafter "Trans.").  Substantial evidence concerning the Barretts' assets was introduced during the October 11 hearing.  In addition, I held a hearing on November 21, 2013, specifically directed to the Motion for Contempt.  <u>See</u> Order to Show Cause [Doc. # 113]; Courtroom Minutes [Doc. # 124].

### III.  Certified Facts

I hereby find by clear and convincing evidence the following facts material to the issue of contempt and certify them to the district judge:[1]

(1)     The Barretts received an undeserved tax refund of more than $215,000 in November 2008.  Response [Doc. # 115] at p. 2.

(2)     The Barretts acknowledge that the refund was "erroneous."  Brief [Doc. # 108] at pp. 2-3; Motion to Vacate [Doc. # 53] at p. 7 (stating that "the Barrett's [sic] were not contesting the fact they owed the IRS for the $217,615 refund").

(3)     In January and February of 2009, the Barretts sent $16,000 by wire transfer to a bank in Uruguay, Complaint [Doc. # 1] at ¶9; Trans. [Doc. # 110] at p. 125 lines 12-14, and

---

[1]The facts largely are undisputed.

attempted unsuccessfully to wire another $48,720 out of the country.  Trans. [Doc. # 110] at p.

125 lines10-19.

(4)      In July 2009, the Barretts moved to Ecuador.

(5)      This action was commenced in September 2010, Complaint [Doc. # 1], and

service was made in Ecuador in December 2010.  Certificate of Execution [Doc. # 115-1] at pp.

161-96.

(6)      The Barretts admit that they were aware of the pending action.  Specifically, the

Barretts state:

> The Barrett's [sic] contacted many firms for legal representation,
> each firm wanted $50,000 or more in retainer which the Barrett's
> [sic] did not have nor see a need to spend since the Barrett's [sic]
> were not contesting the fact they owed the IRS for the $217,615
> refund plus 20% penalty.  The delay in Notice of Service gave the
> Barrett's [sic] time to search for proper legal counsel.  The
> Barrett's [sic] civil legal counsel Michael Grattan refused to enter
> as counsel for this IRS tax case. . . .  Mr. Grattan did how every
> [sic] engage in communication with Lindsay L. Clayton [counsel
> for the United States], to try to research [sic] a settlement.

Motion to Vacate [Doc. # 53] at pp. 7-8.

(7)      On January 6, 2012, Mr. Barrett, purporting to act for himself and his wife, filed a

Motion to Correct the Record [Doc. # 44].  The Motion to Correct the Record was construed as a

motion to set aside default, Order [Doc. # 49, filed 1/30/203] at p. 1, and was denied.  Id. at p. 6.

The Order noted that "Mr. Barrett offers no explanation for the defendants' failure for nearly one

year to answer or otherwise respond to the Complaint" and that "the defendants have not

tendered an answer or other response to the Complaint and, consequently, have not presented a

meritorious defense."  Id. at p. 4.  Consequently, by January 2013 the Barretts were aware of this

action; of the efforts of the United States to recover the undeserved tax refund; and of their

obligation to answer or otherwise respond to the Complaint and establish a meritorious defense.

The Barretts still failed to defend, however, and the Default Judgment was entered on April 9,

2013.

(8)     The Barretts finally retained counsel and undertook to defend the case in earnest

only after they returned to the United States in August 2013 and were detained pursuant to the

Writ.  Until then, they apparently viewed themselves as beyond the reach of the United States.  I

find that the Barretts acted willfully in failing to defend the action and have no excuse for their

default.

(9)     The Default Judgment [Doc. # 52], including the repatriation order contained

within the Default Judgment, is a valid order.  Although the Barretts initially challenged the

validity of the Default Judgment and sought to have it set aside, they have withdrawn that

request.  Motion to Withdraw Motion to Vacate Default Judgment [Doc. # 127];  Pro Se

Opposition [Doc. # 128] at p. 3 (containing the Barretts' statement that they have "agreed to"

withdraw the Motion to Vacate Default Judgment).

(10)     The Default Judgment requires the Barretts "to repatriate and pay over to the

United States any and all funds that they wired to the Banco de la Republica Oriental del

Uruguay."  Default Judgment [Doc. # 52].  The evidence establishes and I find that the Barretts

sent $16,000 by wire transfer to the Banco de la Republica Oriental del Uruguay.  Complaint

[Doc. # 1] at ¶9; Trans. [Doc. # 110] at p. 125 lines 10-19.

(11)     The Barretts have actual knowledge of the Default Judgment.

(12)     The Barretts have failed and refused to repatriate the $16,000 sent out of the

country by wire transfer.

(13)    The Barretts possess assets which are located outside of the United States and which are available to satisfy, in whole or in part, the repatriation order contained within the Default Judgment.  In particular, Mrs. Barrett maintains a bank account at ProduBank.  Trans. [Doc. # 110] at 40:16-41:25.  As of March of 2013, the ProduBank account had a balance of $12,792.81.  Id. at p.41 lines 23-25; Exh. 3.  Although Mrs. Barrett testified that she was unable to access the account balance by the use of her bank card, the evidence is clear and I find that Mrs. Barrett made no meaningful effort to attempt to access the funds in the ProduBank account. In addition, Mr. Barrett owns minority interests in the following companies: RalcoNutri; Ralco Uruguay; Ralco Costa Rico; Ralco Panama; Ecuador Medical Tourism Association; BCS; Aqua Solutions; Jerusalem Fund; Relocation Services of Ecuador; and Petra Petroleum.  Id. at 117:13-124:14.

(14)    Although the Barretts admit that they own an interest in a farm in Ecuador, the unrebutted evidence established that the real property could not be sold due to a boundary dispute.  Id. at 28:11-29:11, 75:6-77:23.

(15)    The Barretts also own a Chevrolet Trailblazer in Ecuador with a Blue Book value of $3,237.60, but the evidence established that it cannot be sold so long as the Barretts are in the United States.  Id. at 79:3-79:20.

(16)    The Barretts' failure to repatriate and pay over to the United States funds equal to the $16,000 sent by wire transfer to Banco de la Republica Oriental del Uruguay from either or both (i) the funds on deposit in the ProduBank account and/or (ii) by sale or transfer of the minority corporate interests in RalcoNutri; Ralco Uruguay; Ralco Costa Rico; Ralco Panama;

Ecuador Medical Tourism Association; BCS; Aqua Solutions; Jerusalem Fund; Relocation

Services of Ecuador; and Petra Petroleum, as required by the Default Judgment, are acts of

contempt.

## IV.  Conclusion

I respectfully RECOMMEND:

(1)      That the district judge find the Barretts in contempt of the Default Judgment; and

(2)      The Barretts be confined in a half-way house until the contempt is purged.[2]

In addition, IT IS ORDERED:

(1)      The Motion to Withdraw Motion to Vacate Default Judgment [Doc. # 127] is

GRANTED; and

(2)      The Motion to Vacate Default Judgment [Doc. # 53] is DENIED as withdrawn.

Dated December 4, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[2]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.   A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).