UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 10-cv-02130-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHARLES BARRETT, and
KATHLEEN BARRETT

    Defendants.

## ORDER

The Barretts move to reconsider this Court's order of January 29, 2014 declining to discharge a writ of ne exeat republica. The Court has considered the motion and response. No reply has been filed. The motion is denied.

## ANALYSIS

A motion for reconsideration is not a vehicle "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Grounds warranting reconsideration include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* In sum, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Does*, 204 F.3d at 1012.

There are two types of motion for reconsideration. A party can file a motion to alter or amend judgment within 28 days under Fed. R. Civ. P. 59(e). After 28 days have passed, a party may seek relief from a final judgment, order, or proceeding under Fed. R. Civ. P. 60(b). In this case, the defendants filed their motion for reconsideration more than 28 days after the Order was filed.

"Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.*, 909 F.2d 1437, 1440 (10th Cir. 1990). "A litigant shows exceptional circumstances by satisfying one or more of Rule 60(b)'s six grounds for relief from judgment." *Van Skiver v. United States*, 952 F.2d 1241, 1243–44 (10th Cir. 1991). These six grounds are as follows:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

To begin, the motion mostly rehashes arguments that the Court has already heard, often more than once. For example, they argue that the initial default judgment against them was made in error, both procedurally (insufficient service of process) and substantively (no tax liability, or alternatively, incorrect assessment of tax liability). These arguments have been raised before. [*See e.g.*, ECF Nos. 108, 110, 142]. The Barretts offer no new evidence in

2

support of these claims. The facts are that the Barretts participated in the fraudulent preparation of their 2007 tax return, accepted the fraudulent refund, and have been attempting to thwart the IRS's collection efforts ever since those efforts began.

The Barretts also argue that the writ of ne exeat republica is being used for an improper coercive purpose, either to exact a more favorable compromise from a taxpayer with valid defenses to the government's claim or as an instrument to create a debtor's prison. Not so. The Barretts have no valid defense against the government's claim. The default judgment was entered against them on April 9, 2013. [ECF No. 52]. They moved to vacate the default judgment [ECF No. 53]. However, they later, through counsel, withdrew the motion. [ECF Nos. 127, 131].

They once again return to their claim that they are being held in a debtors' prison. And, again, this is not true at all. The Barretts are not in custody. Indeed, they are free to travel wherever they would like within the United States. Their right to travel internationally has been restricted by the writ. Even then they have the keys to unlocking that door, and the Court has made it quite clear that it will not take much effort on their part to be able to use them. They are required to make a payment on their outstanding tax obligation only to the extent that the government has proven that they have funds with which they can do so. I remind them that the Court will discharge the writ upon (1) their payment of the $16,000 originally expatriated to Banco de la Republica Oriental del Uruguay[1] and (2) the sale of their real property in Ecuador and application of the proceeds to their tax obligation or, alternatively, their submission of credible evidence that they cannot sell that property. [ECF No. 145].

---

[1] While that bank account no longer holds those funds, over $12,000 is currently held in Mrs. Barrett's ProduBank account.

In their Motion for Reconsideration, the Barretts again assert that they are unable to access the funds in Mrs. Barrett's ProduBank account while in the United States, and that they cannot sell their property because of a boundary dispute. Once again they have made no credible showing on either front. Beginning with the ProduBank account, the Barretts have attached an email chain between themselves and ProduBank employees in which they try to resolve Mrs. Barrett's alleged inability to make withdrawals from ATMs within the United States. [ECF No. 147 at 28–34].[2] On February 6, 2014, Mrs. Barrett emailed ProduBank explaining that her card was not working in ATMs in the United States and asking if the bank could fix her card. *Id.* at 33. In reply, Piedra Lorena from ProduBank wrote, "La tarjeta se encuentra active no hay ningun problema con la tarjeta, usted puede retirar en cualquier cajero banred, cirrus, con la clave de su tarjeta le monto depende del cajero que retire." *Id.* at 32. ("The card is active, and there is no problem with the card. You can withdraw from any Banred or Cirrus ATM with your PIN. The amount depends on the ATM you withdraw from.").[3] But even if the Barretts' claims about their ATM problems were valid, the Court has made it clear that it would release the writ so that Mrs. Barrett could travel to the bank in person and make the withdrawal. The Court can only conclude that the Barretts prefer to hold onto this small nest egg rather than apply it to their tax bill and complain that they remain in a debtor's prison.

As for their real property in Ecuador, the Barretts cling to their claim that they cannot sell the property because of a boundary dispute. [ECF No. 147 at 37–51]. But they attach in support of their motion an email with a translated order disposing of the boundary dispute in their favor.

---

[2] While the Barretts mark these attachments as exhibits, they were uploaded in the same file as the motion itself. The Court cites to the page number of the CMECF document for relative ease of reference.

[3] The Court used the translation provided by the government. Notably, the Barretts did not include a translation of this email.

4

*See id.* at 43–44; *see also id.* at 50.  We have not been informed that there is a pending appeal or offered any other credible support for their claim of inability to sell.  This conduct strikes the Court as consistent with the fact that the payments that have been made to date on the tax obligation have been almost entirely involuntary, essentially the proceeds of the government's collection efforts.

In sum, the Barretts took a large tax refund to which they had no entitlement and refused to repay it.  Over the years, due it seems to their own stubbornness, the obligation has grown, with penalties and interest, to the point that the sums that have been collected despite their efforts to the contrary now exceed the amount of the improperly obtained refund.  The debt will continue to grow.  But, they know precisely what they need to do to discharge the writ, which is substantially less than paying the rest of what they owe.  If they will turn to that task (or negotiate some other resolution with the government), this will be over.

## ORDER

The motion for reconsideration [ECF No. 147] is denied.

Dated this 21st day of April, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge